THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHARON SOLOMON,

                              Plaintiff,

                  - against -                                    **ORDER**
                                                                 **08-CV-4822 (SJF) (ARL)**

SOUTHAMPTON UNION FREE
SCHOOL DISTRICT,

                              Defendant.
------------------------------------------------------------X

FEUERSTEIN, J.


I.      Introduction


On December 1, 2008, plaintiff Sharon Solomon ("plaintiff") filed a complaint against the

Southampton Union Free School District ("defendant" or the "district"), alleging violations of Title

VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e, *et. seq.*, ("Title VII") and 42

U.S.C. § 1981 ("Section 1981") based upon of her race, color, gender, disability and retaliation.  On

September 29, 2010, plaintiff filed an amended complaint withdrawing the section 1981 claims and

adding substantively similar claims of discrimination pursuant to 42 U.S.C. § 1983 ("Section 1983")

and the Americans with Disabilities Act, as codified, 42 U.S.C. § 12112, *et. seq.*

On November 30, 2010, plaintiff's attorney was relieved as counsel.  Plaintiff's new counsel

filed a notice of appearance on December 17, 2010.  Trial was scheduled for September 6, 2011.

On June 20, 2011, defendant filed a motion for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure.   On August 9, 2011, plaintiff's new counsel sought to be relieved

as counsel, which application was denied.  For the following reasons, defendant's motion is granted.

II.    Background

    A.    Factual Allegations

The following facts are not disputed, except where noted.

Plaintiff is an African-American female. Plaintiff's Rule 56.1 Counter-Statement of Material Facts ("Pl. Stmt.") ¶ 1.  In September 1998, plaintiff was hired by the district as a special education teacher for the 1998-99 school year. Defendant's Rule 56.1 Statement ("D. Stmt.") ¶ 1.  Plaintiff was assigned to Southampton High School ("the high school") to teach "resource room" and "inclusion classes."[1]  Id. ¶ 3.  Between 1999 and 2003, plaintiff taught as a "self-contained [special education] teacher" at the high school, receiving tenure effective September 1, 2001.[2]  Id. ¶¶ 6-12.  The position of self-contained teacher was neither a promotion or a demotion.  Plaintiff's Deposition ("Pl. Dep.") at 113.

For the 2003-04 school year, plaintiff was transferred to the Southampton Intermediate School (the "intermediate school"). D. Stmt. ¶ 16.  Prior to the beginning of the school year, plaintiff met with the principal of the intermediate school, Tim Frazier ("Frazier").  Id. ¶ 17; P. Dep. at 281.

---

[1]During a "resource room" period, a special education teacher would be assigned up to five (5) students per period and would teach spelling, reading comprehension, writing, editing and math skills to the students.  D. Stmt ¶ 4.

An "inclusion" period includes non-special education students with special education students, and the special education teacher remains in the classroom while the class lesson is taught.  Id. ¶ 5

[2]A "self-contained teacher" teaches special education students who stay with the teacher for at least five (5) periods each day.  Plaintiff's Deposition at 112.

2

Plaintiff taught special education students at the intermediate school between 2003 and 2006. D. Stmt. ¶¶ 17, 20. Plaintiff claims that during this period she was reprimanded on two (2) occasions by Frazier and told that he would place someone outside her classroom to evaluate her, and that although she did not believe she was being harassed at the time, she now believes the reprimands were discriminatory. Pl. Dep. at 327-29, 336, 389.

For the 2006-07 school year, plaintiff was transferred back to the high school to teach a newly created "life skills" program. D. Stmt. ¶ 21. By the end of the year, however, plaintiff had been transferred back to the intermediate school. *Id.* ¶ 22. The district contends plaintiff was transferred because the administration "determined she would make a good Resource Room teacher and be able to work with the teachers in a more collaborative way" than the teacher then at the intermediate school, *id.* ¶¶ 22-23; plaintiff claims that the transfer was "based upon concerns regarding [plaintiff's] job performance." Pl. Stmt." ¶ 22-23; *but see id.* ¶¶ 44-45.

In June 2007, plaintiff met with Frazier to discuss her transfer to the intermediate school (the "June 2007 assignment meeting"). D. Stmt. 40; Pl. Stmt. ¶ 69; Compl. ¶ 21. Plaintiff claims that Frazier berated and harassed her by telling her that: (1) she was not liked by school staff; (2) she was performing poorly; (3) the assignment was the "end of the road" and he was going "to ride her back"; (4) she would not be transferred out of the intermediate school; (5) she would not be permitted to work on her dissertation or supervise after school activities; and (6) she was required to document "everything." *See* Plaintiff's Exhibit ("Pl. Ex.") 16; Pl. Stmt. ¶¶ 70-78. Defendant claims that Frazier advised plaintiff that he had learned that plaintiff had been working on her dissertation during school and "that if such continued upon her return to the Intermediate School, it would be problematic." D. Stmt. ¶ 40.

3

Upon her return to the intermediate school, plaintiff was assigned to the resource room and shared a classroom with two (2) other teachers, which she claims was confusing for students. Pl. Stmt. ¶¶ 93-94, 102-108. Plaintiff claims that in September 2007 she told the assistant principal Mark Pitterson ("Pitterson"), an African-American male, *id.* ¶ 41, that she was interested in supervising the homework club, but he informed her that "Frazier stated that they were not hiring anyone else," although two (2) "white teaching assistants" were later hired. *Id.* ¶¶ 112-15. Plaintiff did not apply to supervise the homework club for the 2008-09 school year. Pl. Dep. at 540.

On November 13, 2007, plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR") setting forth allegations based upon race and gender discrimination. Pl. Stmt. ¶ 25; Pl. Ex. 15. Plaintiff filed two (2) additional SDHR complaints alleging retaliation and discrimination based upon her alleged disability on February 18 and March 6, 2008 respectively. Pl. Exs. 16, 17.

On February 13, 2008, Frazier prepared a memorandum which noted that plaintiff had not left a lesson plan for a substitute teacher for sick leave taken on February 11 and 12, had not sent a lesson plan for personal leave taken on February 13, and requested that plaintiff meet with him (the "February 13 Memo"). Defendant's Exhibit ("D. Ex.") N. Plaintiff claims that she was at home as a result of her disability on February 11 and 12, and that the February 13 absence had been approved to attend a conference about her SDHR complaints. Pl. Stmt. ¶¶ 134-35. Plaintiff contends that she had provided suitable lesson plans for the days that she was absent. *Id.* ¶¶ 141-65.

On April 8, 2008, plaintiff received a memorandum from Pitterson concerning her absence that day and her failure to provide an adequate lesson plan (the "April 8 Memo"). Pl. Ex. 11. Plaintiff claims that, sometime after the April 8 Memo, Frazier told her to submit medical proof for

4

all sick leave taken. Pl. Stmt. ¶ 192. On June 16, 2008, Pitterson gave plaintiff a poor evaluation based upon excessive absences which plaintiff claims were taken as a result of her disability. Pl. Stmt. ¶¶ 195-96.

Plaintiff argues that the district discriminated against her based upon her race, gender and her temporomandibular joint disorder ("TMJ")[3]. *See* Pl. Stmt. ¶ 116.

III.    Discussion

   A.    Summary Judgment Standard

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to

---

[3]Plaintiff refers to her condition as "temporal mandibular joint disorder." Pl. Stmt. ¶ 116.

5

establish the existence of a factual question that must be resolved at trial.  See Koch v. Town of Brattleboro, VT, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried.  If the nonmoving party does not so respond, summary judgment will be entered against him."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted).  The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading."  Id. at 532-33 (quotations and citations omitted).

B.     Discrimination Claims

1.     Title VII and Section 1983 Race and Gender Discrimination Claims

To establish a Title VII  discrimination claim in the absence of overt evidence of discrimination, a plaintiff must first set forth a prima facie case of discrimination pursuant to the burden shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  To establish a prima facie case of discrimination, plaintiff must show that: (1) [she] was a member of a protected class; (2) [she] was qualified for the job in question; (3) the employer took an adverse employment action against [her]; and (4) the adverse

6

action took place under circumstances giving rise to an inference of discrimination. See Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). The burden of proof at the prima facie stage is "de minimis." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001).

If a plaintiff successfully establishes a prima facie case, a "rebuttable presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." Stratton v. Dep't. for the Aging for City of New York, 132 F.3d 869, 878-79 (2d Cir. 1997). If the defendant meets this burden, in order to avoid summary judgment, plaintiff must "point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a substantial reason for the adverse employment action." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552–53 (2d Cir. 2010) (citations omitted).

The McDonnell Douglas burden shifting analysis applies to employment discrimination claims brought pursuant to section 1983 as well as Title VII. Gladwin v. Pozzi, 403 Fed.Appx. 603, 605 (2d Cir. 2010) (summary order); Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004); Sorlucco v. New York City Police Dept., 888 F.2d 4 (2d Cir. 1989).


2.    ADA Disability Discrimination


To succeed on a discrimination claim pursuant to the ADA a plaintiff has the initial burden of proving: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered

an adverse employment action because of [her] disability or perceived disability." <u>Capobianco v.</u> <u>City of New York</u>, 422 F.3d 47, 56 (2d Cir. 2005); <u>Ryan v. Grae & Rybicki, P.C.</u>, 135 F.3d 867, 869-70 (2d Cir. 1998).


      a.    Disability


The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one [1] or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In the Second Circuit, the regulations of the Equal Employment Opportunity Commission ("EEOC") are entitled to "great deference" in interpreting the ADA. <u>Reeves v. Johnson Controls World Servs.</u>, 140 F.3d 144, 150 n. 3 (2d Cir. 1998). The EEOC's regulations interpret the "substantially limits" requirement and the "major life activities" requirement inclusively. 29 C.F.R. §§ 1630.2(i), (j)(1). Although plaintiff testified that she was diagnosed with TMJ in August 2007, Pl. Dep. at 522, allegedly as a result of the June 2007 assignment meeting, plaintiff's medical records demonstrate a TMJ medical diagnosis in September 2003. D. Ex. P. It appears that plaintiff is arguing that her TMJ diagnosis is both an injury caused by defendant's conduct, and a disability upon which she is able to allege discrimination. In order to avoid an evaluation of plaintiff's credibility at this stage, the Court will rely upon the TMJ diagnosis evinced in plaintiff's medical records.

3.   Adverse Employment Actions

Defendant argues that plaintiff has failed to establish that plaintiff suffered an adverse employment action, which would obviate her ADA and Title VII discrimination claims. See Platt v. Inc. Vill. of Southampton, 391 F. App'x. 62, 64 n. 1 (2d Cir. 2010) (the Court should analyze retaliation and discrimination claims under the ADA and Title VII under the same burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. at 801-03) (citing Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001)). Plaintiff claims that the adverse employment actions by defendant are: (1) the June 2007 assignment meeting, (2) the February 13 Memo, (3) requiring plaintiff to share a room with another teacher, (4) transfer to the intermediate school for the 2007-08 school year, (5) instruction not to work on her dissertation during school hours, (6) failure to assign plaintiff to the homework club, and (7) the requirement to provide medical proof for sick leave taken.

In the context of a claim of discrimination, an "adverse employment action" for a discrimination claim is a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted). A change in working conditions is materially adverse if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (citing Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). Examples are "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id.

9

A disciplinary or counseling memo which criticizes an employee without any effect on working conditions does not constitute an adverse employment action. <u>Weeks v. New York State (Div. of Parole)</u>, 273 F.3d 76, 86 (2d Cir. 2001), *abrogated on other grounds by* <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 108-14, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Therefore, insofar as plaintiff challenges criticism by her employer without a materially adverse change in working conditions, her discrimination claims fail.

4.    Plaintiff's Specific Claims

a.    The June 2007 Assignment Meeting

Plaintiff states that Frazier told her that she had been transferred to the intermediate school because she was "not working up to par." D. Ex. 16 at 3. Plaintiff claims that Frazier stated:

> You are not doing what you should be doing. I want you to know that I am not going to shuffle you back to the high school! You are never leaving the building! You are going to stay here and I am going to ride your back! I am going to get you to work for me the way I feel you should be working for me, and if you don't, that's it, this is it for you! This is the end of the road! Just because you have tenure . . . that means nothing. I want everything you do to be documented. I am a very busy person and you are a very busy person but I want you to come to me and you are going to make sure that we have these meetings and we are going to have meetings every week. I heard you are always working on your dissertation. I don't want you focused on anything else accept [sic] what you are to do here! You have the potential to be a very good teacher, you were a very good teacher looking at your records, and I want you to be a good teacher if you are working with me. Don't even think about working the [h]omework club or anything else after school! Just concentrate on what you are supposed to do here. . . . I am not happy that you are coming back to me! You are not coming back to me in high esteem. You have to earn that.

*Id.* at 3-4. Plaintiff testified that Frazier has never raised his voice to her, and that she does not

10

remember ever hearing Frazier making a derogatory statement about a person based upon gender, skin color or disability. Pl. Dep. at 491-92, 517. As plaintiff has not provided evidence that the meeting was or resulted in a materially adverse change in the terms or conditions of her employment, defendant's summary judgment motion is granted as to the claims with respect the June 2007 assignment meeting.

> b.     The February 13 Memo

In the February 13 Memo, Frazier stated that plaintiff had not provided lesson plans for days of anticipated absence, that the e-mailed lesson plans had to be modified by Pitterson, and that Frazier wished to speak with plaintiff. D. Ex. N. Plaintiff claims that she had left appropriate lesson plans. Pl. Dep. at 473. Despite the fact that the memo was sent to the superintendent, plaintiff does not contend that any term of her employment was altered as a result. *See* Pl. Stmt. ¶¶ 134-68. In fact, plaintiff never sought to discuss the February 13 Memo with Frazier. Pl. Dep. at 476. As plaintiff has failed to allege any materially adverse change in the terms and conditions of her employment as a result of the February 13 Memo, defendant's motion for summary judgment is granted with respect to plaintiff's discrimination claims based upon the February 13 Memo.

> c.     Sharing a Classroom with Other Teachers

Plaintiff claims that when she was transferred to the intermediate school, she was required to share her classroom with other teachers. *See* Pl. Stmt. ¶¶ 93-110. Plaintiff has failed to provide

evidence that the lack of her own classroom was "more disruptive than a mere inconvenience." Galabya, 202 F.3d at 640; see also Gordon v. New York City Bd. of Educ., No., 01 Civ. 9265, 2003 WL 169800, at *7 (S.D.N.Y. January 23, 2003).  Plaintiff claims that her ability to conduct her lessons was affected because the students were "constantly distracted." Pl. Ex. 16 at 15; Pl. Ex. 5 at 118. The unsupported statement that students were distracted does not state a materially adverse change in the terms of her employment.

In any event, plaintiff would be unable to establish that sharing a classroom gives rise to an inference of discrimination.  Although, plaintiff argues that prior "white" resource room teachers were given their own classrooms, Pl. Stmt. ¶¶ 96-99, and that she "could have been given" her own classroom at the school, id. ¶ 100, she acknowledges that in the past she had "always had her own classroom," id ¶ 94., and that on the two (2) occasions that she shared classrooms, the rooms were shared with male and female Caucasian teachers. Pl. Dep. at 405,  444.  Plaintiff's argument that she was not similarly situated to the other Caucasian teachers sharing the classroom because she was a resource room teacher and they were inclusion teachers is not supported by the evidence, especially as plaintiff has held both positions, and testified that the positions were essentially the same. Memorandum in Opposition at 30; Pl. Dep. at 97-98, 113.

For the foregoing reasons defendant's motion is granted with respect to this claim.

        d.      Transfer to the Intermediate School for the 2007-08 School Year

Transfer of a tenured teacher between schools within the same district, unaccompanied by any demotion, change in salary or change in the terms of employment does not constitute an adverse

12

employment action. See Weeks, 273 F.3d at 85 (a transfer of offices and removal of files are insufficient to establish an adverse employment action); see also Uddin v. City of New York, No. 07 Civ. 1356, 2009 WL 2496270, at *17 (S.D.N.Y. August 13, 2009) (relocation of office, inability to lock office, and requirement that office be shared with another employee, and unsupported allegations of loss to reputation do not amount to an adverse employment action); Cooper v. New York State Dep't. of Human Rights, 986 F.Supp. 825, 828 (S.D.N.Y. 1997) (transfer and change of responsibilities without reduction in schedule and salary is not an adverse employment action). Although the parties dispute the underlying motivation for the transfer, plaintiff does not claim that her salary or responsibilities were affected. The only change alleged following her reassignment to intermediate school in 2007, is that she was required to share a classroom, see Pl. Stmt. ¶¶ 93-110, and she has not shown that the sharing of a classroom constituted an adverse employment action. See supra.

Plaintiff argues that the transfer to the intermediate school was itself an adverse employment action because it was against her wishes and in spite of her allegations of harassment. Memorandum in Opposition at 11-12. She does not allege any duties or responsibilities that were affected by the transfer. Plaintiff's desire to continue at the high school, absent a change in duties or responsibilities, does not convert the transfer into an adverse unemployment action.

Plaintiff argues that the fact that she was replaced at the high school with a Caucasian employee is evidence of a discriminatory animus. Memorandum in Opposition at 15-16. As the transfer is not an adverse employment action, her replacement by a Caucasian teacher does not defeat summary judgment on that claim. Therefore, the involuntary transfer to the intermediate school does not constitute an adverse employment action, and the defendant's motion is granted with respect to

this claim.

      e.      Instruction Not to Work on her Dissertation During School Hours

Plaintiff claims that Frazier told her that she could not work on her dissertation during school hours. Pl. Stmt. ¶¶ 72-73. Plaintiff argues that she was entitled to work on her dissertation during her professional period and did not work on her dissertation during other school hours. Pursuant to the "Agreement between the Southampton Teachers' Association and the Board of Education for Southampton Union Free School District" ("the Agreement"), plaintiff is permitted to use her professional period for a variety of purposes related to her position at the school including: development of curriculum, staff meetings, help for students and peer observation. *See* D. Ex. L at 12. There is no provision that allows a teacher to work on a 'professional' endeavor of a purely personal nature. Prohibiting plaintiff from working on her dissertation does not constitute a materially adverse change in employment conditions or terms and this prohibition did not alter the terms of her employment. Therefore, defendant's motion is granted with respect to this claim.

      f.      Denial of the Application for Homework Club

Plaintiff claims that the denial of her application for the homework club position constituted an adverse employment action based upon her inability to receive additional compensation for the assignment. Pl. Dep. 538-39. Plaintiff concedes that she did not apply for homework club for the 2008-09 school year because of her TMJ, her schedule, and stress, therefore, the claim that she was

14

denied the opportunity to work in homework club in 2008-09 is dismissed.

Although plaintiff does not allege an amount of compensation which was lost, and defendant argues that homework club is merely an honorific and therefore de minimus, see Zelnik v. Fashion Institute of Technology, 464 F.3d 217, 227 (2d Cir. 2006), interpreting the facts in a light most favorable to the plaintiff, it is not clear at this stage that deprivation of homework club participation is a de minimus change in employment status.

However, and even assuming that denial of participation in the homework club was an adverse employment action, plaintiff does not provide evidence that the circumstances of the denial of her application give rise to an inference of discrimination.  Plaintiff relies upon the fact that two (2) "white" teachers were hired after she expressed an interest in the homework club. *See* Pl. Stmt. ¶ 114; Pl. Ex. 25 at 17.  Based upon Frazier's indication at the June 2007 assignment meeting that she could not join the homework club because she had to focus on teaching and plaintiff's prior participation in the homework club during the 2004-06 school years, there is no evidence supporting an inference of discrimination.  The mere fact that two (2) Caucasian teachers were hired instead of plaintiff does not create an inference of discrimination sufficient for a prima facie case.

However, even if plaintiff had established a prima facie case, defendant has met its McDonnell Douglas burden.  Pitterson testified that other homework club teachers had complained to him that plaintiff was not taking on her share of the homework club responsibilities and that he observed the same. D. Ex. K at 72-75.  Defendant's ability to articulate a legitimate, non-discriminatory reason for denying plaintiff's application to join the homework club shifts the burden to plaintiff to demonstrate that it is more likely than not that the employer's decision was motivated at least in part by discrimination.  Plaintiff has not provided any evidence to meet this

burden. For these reasons, defendant's motion is granted with respect to plaintiff's discrimination claim based upon her denial of homework club.

g.   The Requirement to Provide Medical Proof, and Plaintiff's Negative Evaluation Based upon Excessive Absences

Plaintiff claims that her obligation to provide medical documentation for sick leave absences constitutes an adverse employment action motivated by discrimination based upon her disability. Pl. Stmt. ¶ 192. Although plaintiff concedes that the superintendent and/or the board of education may require "medical proof" pursuant to the agreement, she argues that the principal does not have that authority. *Id.* ¶¶ 189-92. However, even assuming that Frazier did not have the authority to compel plaintiff to submit a doctor's note for sick leave, requiring plaintiff to do so does not materially change the terms of her employment such that it constitutes an adverse employment action. There is no allegation that plaintiff was ever prevented from taking sick leave or was unable to take sick leave as a result of this requirement. Plaintiff has not produced any evidence that she was not paid or otherwise penalized for failing to provide a medical documentation when taking sick leave. Without any evidence that Frazier's request for medical documentation altered the terms or conditions of her employment, plaintiff has failed to establish an adverse employment action.

Plaintiff also claims that a negative evaluation which referred to her absences was pretextual and motivated by discrimination. Although a negative evaluation may constitute an adverse employment action in some circumstances, a determination which may require a jury, see Lawrence v. Mehlman, 389 F.App'x. 54, 56 (2d. Cir. 2010) (collecting cases); Sanders v. New York City

16

Human Res. Admin., 361 F.3d 749, 756 (2d Cir. 2010), here plaintiff has failed to provide *any* evidence that her negative evaluation affected her employment in any way, and therefore it is not an adverse employment action.

Even assuming that the requirement to provide medical proof of sick leave and the negative evaluation constitute adverse employment actions, and establish a prima facie claim, defendant has met its burden of articulating a non-discriminatory purpose for these actions. Pitterson testified that during the 2007-08 school year, plaintiff had been absent twenty-four (24) days, thirteen percent (13%) of days of instruction, which he characterized as "excessive," D. Ex. K at 56, Pl. Ex. 41, and indicated his concern in the April 8 Memo that plaintiff had taken a number of sick leave days immediately prior to personal leave and had failed to provide adequate lesson plans. Pl. Ex. 11. Therefore the burden shifts back to plaintiff to establish a discriminatory motive. Although plaintiff argues that she was entitled to use extra sick leave which she had carried over from previous years, Pl. Stmt. ¶¶ 181, 184, and that defendant knew about her TMJ, *id.* ¶¶ 169-70, she has provided no evidence to establish that it is more likely than not that the requirement to provide a doctor's note was motivated to any degree by discrimination against her based upon her TMJ. Therefore, defendant's motion is granted with respect to the discrimination claims based upon plaintiff's alleged obligation to provide medical proof for sick leave.

h.    Plaintiff's Evidence of Disability Discrimination

Plaintiff contends that her TMJ diagnosis establishes a disability for the purposes of the ADA. Memorandum in Opposition at 18-21. Assuming that TMJ is a disability within the ADA,

17

and even assuming the truth of plaintiff's claim that sick leave was not misused, the mere fact that she was reprimanded for misuse of sick leave, does not evince a discriminatory motive without any other evidence.

i.      Plaintiff's General Allegations of Frazier's Animus

Plaintiff purports to provide evidence that Frazier spoke to employees of color and women with "a certain tone of arrogance" and disrespect, bullied female teachers, and argues that this evinces a discriminatory purpose for all of Frazier's challenged conduct. Memorandum in Opposition at 14-15. However, plaintiff never asked any of the Caucasian males whether they were treated in a similar manner, Pl. Dep. at 643-44, and provides evidence of harsh treatment by Frazier of employees of all races and genders. *See* Defendant's Reply Memorandum at 11-12 (citing to Pl. Ex. 4, 6, 7, 10). Assuming that plaintiff's allegations are true, and even assuming that Frazier's conduct could be an adverse employment action, the defendant has provided evidence of legitimate purposes for the actions taken and plaintiff has not established that the evidence is pretextual and that the actions were motivated by Frazier's discriminatory animus.

C.      Retaliation Claims

Title VII and the ADA forbid an employer from retaliating against its employees for challenging conduct pursuant to Title VII or the ADA. *See* 42 U.S.C. § 2000e-3(a) (Title VII); 42 U.S.C. § 12203(a) (ADA). Courts apply the McDonnell Douglas burden shifting analysis to

18

retaliation claims arising from the ADA and Title VII.  See Platt, 391 F.App'x at 64 n. 1;
Lovejoy-Wilson, 263 F.3d at 223; Treglia v. Town of Manlius, 131 F.3d 173, 719 (2d Cir. 2002).

Pursuant to Title VII and the ADA, a plaintiff must show that "(1) [s]he engaged in an
activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took
adverse employment action against [her]; and (4) a causal connection exists between the alleged
adverse action and the protected activity." Treglia, 131 F.3d at 719 (ADA retaliation claim); Kessler
v. Westchester Cnty. Dept. Of Soc. Servs., 431 F3d 199, 205-06 (2d Cir. 2006) (same elements for
a Title VII retaliation claim).  In Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct.
2405, 165 L. Ed. 2d 345 (2006), the Supreme Court expanded the meaning of an adverse
employment action for Title VII retaliation claims requiring plaintiff to show "that a reasonable
employee would have found the challenged action materially adverse, which in [the retaliation]
context means it well might have dissuaded a reasonable worker from making or supporting a charge
of discrimination." Id. at 68. (citations omitted).  Although White expanded the conduct prohibited
by Title VII's anti-retaliation provision, the requirement that the action be "materially adverse" by
an objective standard excludes trivial harms or "unusual subjective feelings." Id. at 68-69.  Given
that Title VII and ADA retaliation claims are analyzed pursuant to the same framework, the same
standard applies to ADA retaliation claims.  See Ragusa v. Malverne Union Free Sch. Dist., 381
F.App'x. 85, 90 (2d Cir. 2010).

Plaintiff's complaint filed with the SDHR, assuming it was filed in good faith and with a
reasonable belief that the district's conduct was unlawful, constituted a protected activity.  See
Kessler, 431 F3d at 210.  Therefore, although plaintiff does not specify the conduct upon which she
bases a retaliation claim, she could only logically challenge conduct occurring after she first filed a

19

SDHR complaint on November 13, 2007.  The only challenged actions occurring after the initial SDHR complaint was filed were: the issuance of the February 13 Memo; the April 8 Memo; the requirement that plaintiff submit medical proof if she were to take sick leave; her allegedly "negative" evaluation; and "glares" by Frazier at the school.  Plaintiff does not specifically argue how any of this alleged conduct might have deterred plaintiff, or another reasonable employee, from filing a complaint.

Assuming, *arguendo*, the alleged conduct constitutes a basis for retaliation claims, plaintiff must still satisfy the McDonnall Douglas standard. See Hicks v. Baines, 593 F.3d 159, 170-171 (2d Cir. 2010); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

A plaintiff may establish a causal connection between the protected action and the retaliation based upon temporal proximity alone only if the proximity is "very close."  Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001).  The February 13 Memo, prepared on the date of her appearance upon her SDHR complaint on February 13, 2008 satisfies this requirement.  However, and although the April 8 Memo was prepared approximately one (1) month before the third SDHR complaint was filed, the fact that three (3) SDHR complaints had been filed mitigates the probative value of temporal proximity as evidence of a causal connection.  Nevertheless, and although the evidence of a causal connection is slight, considering the evidence in a light most favorable to the plaintiff, the Court declines to find that a plaintiff has not established a prima facie case of retaliation as a matter of law, shifting the burden to defendant to provide a legitimate, non-pretextual basis for its action.

Defendant has presented evidence that the February 13 Memo was issued based upon plaintiff's failure to adequately provide lesson plans for the three (3) days that she was absent.

20

Pitterson testified that he searched for emergency lesson plans for February 11 and 12, was unable to find them, D. Ex. K at 25-30, and that the lessons e-mailed to the school for February 13 were insufficient. *Id.* at 36-38. The February 13 Memo stated that on February 11 and 12 "there were no lesson plans available for your substitute teacher" and that for February 13 "there were no lesson plans left in advance," and that when received, "they had to be modified." D. Ex. N. Although plaintiff disputes these claims, the evidence provided by defendant articulates a legitimate, non-retaliatory reason for the issuance of the February 13 Memo. Although plaintiff claims that the memorandum was discriminatory "based upon a feeling," Pl. Dep. at 474, she does not provide any evidence that supports her claim that the February 13 Memo was pretextual and that a substantial reason for the memorandum was retaliatory. Therefore, she has failed to meet her ultimate burden to overcome a summary judgment motion on this claim, see <u>Kaytor</u>, 609 F.3d at 552–53, and defendant's motion is granted with respect to this claim.

With respect to the April 8 Memo, the claim that plaintiff was required to produce medical proof when she took sick leave, and her unsatisfactory evaluation, defendant has produced evidence that plaintiff "was out quite a few days" before the April 8 Memo was written, and that by the end of the year she had missed twenty-four (24) school days that year, thirteen percent (13%) of the school year, which Pitterson considered to be excessive. D. Ex. K at 56; Pl. Ex. 11. The April 8 Memo states that she had called in sick "the day or days immediately preceding a scheduled personal day," that on April 8 she was absent and missed six (6) legally mandated "Committee on Special Education" meetings, and that she had again failed to leave adequate lesson plans. Pl. Ex. 11. Plaintiff does not dispute that she frequently took sick leave, or that she took sick leave days prior to her personal leave days. Insofar as she argues that she is permitted to take as much sick leave as

21

she has accrued over her employment, and that she was absent as a result of her TMJ, Pl. Stmt. ¶ 184, she has failed to overcome the defendant's legitimate and non-retaliatory bases for requesting medical proof, issuing the April 8 Memo, and giving plaintiff an unsatisfactory evaluation based upon her absences. Plaintiff fails to provide any evidence that would permit the inference that these actions were pretextual and motivated by a retaliatory purpose, arguing only that Frazier intended to "harass, retaliate, and discriminate," without any support. Plaintiff's Declaration ¶ 31. As plaintiff has not met her burden, summary judgment is granted on this claim.

D.     Hostile Work Environment Claim

Title VII hostile work environment claims require a showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010) (internal quotations and citations omitted); see also Kaytor v. Elec. Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010); McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 79 (2d Cir. 2010). "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999); see also Kaytor, 609 F.3d at 547; McGullam, 609 F.3d at 79; Gorzynski, 596 F.3d at 102 (holding that a plaintiff must show not only that she subjectively perceived the work environment to be abusive, but also that the work environment was objectively hostile and abusive).

In order to support a hostile work environment claim, the "incidents must be more than

22

episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Gorzynski, 596 F.3d at 102. In determining whether a plaintiff has established a hostile work environment claim, the court must look to the totality of circumstances. Kaytor,609 F.3d at 547; McGullam, 609 F.3d at 79; Gorzynski, 596 F.3d at 102. Factors that the court should consider in making its hostile work environment determination include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). However, "no single factor is required." Id.; see also Kaytor, 609 F.3d at 547.

A plaintiff alleging a hostile work environment claim must also establish that "the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of [a protected category]." Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80-81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (emphasis in original) (internal quotations and citations omitted); see also Kaytor, 609 F.3d at 547 ("It is axiomatic that to prevail on a claim of hostile work environment . . ., the plaintiff must establish that the abuse was based on [a protected category].")

Plaintiff argues that the hostile work environment claim is based upon Frazier's statements at the June 2007 assignment meeting that: he would "ride her back"; he would always be watching her; she would never leave the building and her job security was at risk. Memorandum in Opposition at 17-18. She also claims that: he "made unreasonable demands" of plaintiff that were not made of her co-workers; "ordered her [to] provide coffee and cake for her Caucasian subordinates"; glared at her; he was hostile and critical of her "judgments and work products"; he rebuffed and chastised plaintiff after she challenged another teacher's authority, and directed her to apologize to another

23

teacher in his presence. *Id.*

With respect to plaintiff's meetings with Frazier, she testified that she did not feel harassed at the time, might only have felt a little upset and has never heard Frazier make a derogatory statement about a person based upon race, gender or disability. Pl. Dep. at 292-94, 334-336, 491-93. Plaintiff testified that, only in retrospect, she believes that: she was being treated differently because she is an African-American woman; if she were "white," her apology would have been good enough, *id.* at 327-29; she was accused despite her belief that she had done nothing wrong, *id.* at 336, 352-53, 375-78; that Frazier would not have told a white male teacher that someone would be placed outside his door to evaluate him because it was humiliating, *id.* at 356-58, 388-91, 370-75, 474, and that she believed if she were white he would have been more supportive of her dissertation, *id.* at 428-31. Plaintiff states that she believes that she was being discriminated against based upon her TMJ because the sick days were being "used against her" by appearing on her evaluation, and believes that other "white women" have gone out for surgery without sick days appearing on their evaluation, but does not know that for a fact. *Id.* at 493-495. Plaintiff does not claim she utilized sick leave for surgery.

The only statements or conduct to which plaintiff specifically refers is that she was told to "serve coffee and cake" to the teaching assistants. *Id.* at 359-61, 376-77. However, plaintiff testified that Frazier had indicated that she "needed to get along with" the teaching assistants, *id.* at 359-60, and that she was "not sure if [she] took it to mean that [Frazier] wanted [her] to make peace with them," *id* at 360, but that she took it to mean that Frazier wanted her to be "subservient" to them because after she explained her position to him, he told her she had a communication problem. *Id.* at 360.

24

Although plaintiff challenges Frazier's conduct and reprimands as harassing and discriminatory, she has failed to provide evidence that any of these actions constitute discrimination based upon her race, gender or disability. Plaintiff's conclusion that Frazier wanted her to be subservient to the teaching assistants is not supported by the evidence, and plaintiff fails to provide any objective evidence that Frazier's conduct was based upon her gender, race or disability. Indeed, plaintiff has not identified a single instance from her personal knowledge where she had been treated differently from a person of a different race, gender, or who was not suffering from TMJ. The conclusory allegation that she had been treated differently than other teachers in the school, without objective evidence that the different treatment was based upon her race, gender or disability, does not adequately set forth a hostile work environment claim. Plaintiff's completely unsubstantiated belief that Frazier had treated her differently based upon her race, gender and disability is insufficient to establish a triable issue of fact as to whether the conduct was discriminatory. Therefore, defendant's motion is granted with respect to her hostile work environment claim.

E.       Section 1983 Claims against the District Generally

A section 1983 claim must allege that "the conduct complained of must have been committed by a person acting under color of state law," and "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). Section 1983 creates no substantive rights, but "provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma v. Tuttle, 471 U.S. 808, 816, 105

S. Ct. 2427, 2432, 85 L. Ed. 2d 791 (1985)).   Section 1983 claims alleging retaliation and discrimination based upon race are evaluated pursuant to the same "analytic framework" as Title VII claims. See Sorlucco v. New York City Police Dept., 888 F.2d 4, 6-7 (2d Cir. 1989); see also Carmody v. Vill. of Rockville Centre, 661 F.Supp.2d 299, 330 (E.D.N.Y. 2009); Davis v. Oyster Bay - East, No. 03–CV–1372, 2006 WL 657038, at *8, n. 12 (E.D.N.Y. March 9, 2006).

A school district may not be held liable under Section 1983 unless "(1) [] a district employee was acting pursuant to an expressly adopted official policy; (2) [] a district employee was acting pursuant to a longstanding practice or custom; or (3) [] a district employee was acting as a 'final policymaker.'" Hurdle v. Bd. of Educ. of City of New York, 113 F.App'x. 423, 424-25 (2d Cir. 2004) (citations omitted);  Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978).  Plaintiff has not provided any evidence that the contested actions were done pursuant to a policy or a longstanding practice or custom, or that Frazier had policymaking authority on behalf of the district. See City of St. Louis v. Praprotnik, 485 U.S. 112, 124, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (policy making authority is an issue of state law); Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (same); N.Y. Educ. Law §§ 1709, 1711 (establishing the powers of the Board of Education and of the superintendent of a union free school district).  Other than the involuntary transfer to the intermediate school discussed above, no action taken by the district, the board of education, or the superintendent has been challenged.

F.      State Law Claims

"Federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment." <u>Walker v. Time Life Films, Inc.</u>, 784 F.2d 44 (2d Cir. 1986); <u>see also</u> <u>Kavit v. A. L. Stamm & Co.</u>, 491 F.2d 1176 (2d Cir. 1974).   Given the nature of the remaining claims, and the fact that defendant's summary judgment motion has been granted as to all of plaintiff's federal claims, the Court declines to exercise pendent jurisdiction over the remaining state law claims.

IV.    Conclusion

For the foregoing reasons, defendant's motion is granted.  The Clerk of the Court is directed to close the case.

**SO ORDERED.**

SANDRA J. FEUERSTEIN
United States District Judge

Dated: September 1, 2011
        Central Islip, New York

27